# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2486

———————————————

Shawn Smith, on behalf of himself and all others similarly situated

*Plaintiff - Appellant*

v.

Southern Farm Bureau Casualty Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

——————————

Submitted: May 13, 2021
Filed: November 19, 2021

——————————

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Shawn Smith claims that Southern Farm Bureau Casualty Insurance Company undervalued his totaled pickup truck. After he sued and sought class certification, the district court dismissed for failure to state a claim. We agree that the Arkansas regulation that Farm Bureau allegedly violated is not incorporated into his policy, so Smith can't use it as the basis for a breach of contract claim. But because he also

states a breach of contract claim based on the policy language, we reverse in part. We deny his motion to certify questions of law to the Arkansas Supreme Court.

I.

Shawn Smith owned a 2006 Ford F-150 insured by Farm Bureau. The truck was totaled in an accident.

The policy said that "[f]or each accident [Farm Bureau] will pay actual cash value of loss or damage less your deductible amount." The policy also said that "[a]ctual cash value will include consideration of fair market value, age, and condition of the item in question at the time of loss or damage."

To calculate the truck's actual cash value, Farm Bureau used a valuation report prepared by a third party, Mitchell International. The report included prices (pulled from dealers' websites) for three "comparable vehicles"—2006 F-150s for sale within 150 miles of Smith's home. For each comparable vehicle, Mitchell adjusted the dealer's listed price to account for features—trim, mileage, and the like—different from Smith's F-150. Mitchell also applied a "Projected Sold Adjustment," lowering each comparable vehicle's value by 9% of the listed price.[1] The report explained that the Projected Sold Adjustment "reflect[ed] consumer purchasing behavior (negotiating a different price than the listed price)." In other words, Mitchell assumed that most car buyers pay less than the sticker price. Mitchell assigned a "market value" to Smith's F-150 based on the adjusted values for the three comparable vehicles, and Farm Bureau relied on this when it calculated how much it would pay.

---

[1]Mitchell lowered the three comparable vehicles' listed prices by $747, $429, and $795. App'x at A078–79.

Smith says that Farm Bureau breached its duty to pay him the truck's actual cash value. He argues that the Projected Sold Adjustment was made-up and unrealistic, so Farm Bureau undervalued his truck.

Smith filed a class action complaint for breach of contract and declaratory judgment. His breach of contract claim was based, in part, on an alleged violation of Arkansas Insurance Rule and Regulation 43,[2] which he claimed was incorporated into the policy. The district court granted Farm Bureau's motion to dismiss for failure to state a claim, holding that Regulation 43 was not part of the policy. Smith filed a motion to clarify whether the Order also disposed of the common law breach of contract theory. The district court dismissed the motion in a one-sentence minute order.

On appeal, Smith argues that the district court improperly dismissed his case by incorrectly applying Arkansas law and by failing to address his common law breach of contract claim. He says that although his complaint included only one breach of contract count, he alleged two different theories: (1) that Farm Bureau breached a duty established by Arkansas Insurance Rule and Regulation 43, which is incorporated into the contract under Arkansas law and the policy's "Conformity Clause"; and (2) that Farm Bureau breached its contractual obligation to pay actual cash value by applying the Projected Sold Adjustment to the listed price of comparable vehicles, resulting in a lower fair market value.

II.

We review the district court's grant of a motion to dismiss for failure to state a claim *de novo*. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020). We also review *de novo* the district court's interpretation

---

[2]Setting minimum standards for insurance settlement practices.

of the policy and Arkansas law, looking to "related decisions by the state's highest court and by the intermediate court of appeals" when a legal question is undecided. *Palmer v. Ill. Farmers Ins.* Co., 666 F.3d 1081, 1085 (8th Cir. 2012); *see Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (*de novo* review of contract interpretation); *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) (*de novo* review for state law).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But while we accept Smith's facts alleged as true and draw all inferences in his favor, we are not required to accept his legal conclusions.  *East v. Minnehaha Cty.*, 986 F.3d 816, 820 (8th Cir. 2021).

## A.

The first question is whether Arkansas Insurance Rule and Regulation 43 is incorporated into the policy.  If it is, a violation of the regulation is also a breach of contract.

Smith's first theory is that Regulation 43 is automatically incorporated into the policy, based on the "general rule" that a statute governing insurance coverage becomes part of policies affected by it.  We have already held that Regulation 43 does not create a private right of action and is not automatically incorporated into Arkansas insurance policies.  *Design Pros. v. Chi. Ins. Co.*, 454 F.3d 906, 912 (8th Cir. 2006).

Smith's second theory is that the policy's "Conformity Clause" incorporates Regulation 43 into the policy.  It says, "[Farm Bureau] will change any terms or conditions of your policy conflicting with the laws of the State of Arkansas, to bring them into conformity with such laws."  But the Conformity Clause is not triggered

here. In the few Arkansas cases addressing conformity clauses, courts stick to the plain meaning of the contract language, and have required a true conflict between the contract terms and the statute at issue. *See, e.g.*, *Ferguson v. Order of United Commercial Travelers of Am.*, 821 S.W.2d 30, 32 (Ark. 1991).

The Conformity Clause limits its application to (1) policy terms or conditions that (2) conflict with state law. So we must focus on the *policy* terms, not the challenged practice. The contract says

> Actual cash value will include consideration of fair market value, age, and condition of the item in question at the time of loss or damage.

The relevant portion of Regulation 43, according to Smith, says

> [a]ny deductions from such [actual] cost [to purchase a comparable automobile] . . . must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount.

Ark. Ins. Rule 43 § 10(a)(3).

The regulation is more specific about what insurers should disclose about their actual cash value calculations, but it does not say that insurers can't consider the factors mentioned in the policy. And other parts of the same section suggest that insurers *should* use a car's condition and market value to determine actual cash value. *See, e.g.*, §§ 10(a), (a)(2)(A), (a)(3). There is no conflict between the policy term and Regulation 43. Because the Conformity Clause isn't triggered, it cannot operate to incorporate Regulation 43 into the policy.

B.

Smith argues that his complaint also alleges a common law breach of contract claim. The district court thought Smith's breach of contract claim was based only on Regulation 43. The complaint is not a model of clarity, but a fair read shows that Smith made two distinct breach of contract theories. Although it lists only one breach of contract count, it discusses both Farm Bureau's alleged failure to base its payment on "fair market value" (policy language that is not in Regulation 43) and its failure to use "measurable, discernible, itemized and specified" deductions (Regulation 43 language). So we will analyze his common law breach of contract theory to see if it should have survived the motion to dismiss, taking factual allegations as true.

The elements of a common law breach of contract claim in Arkansas are: (1) an enforceable contract exists, (2) the defendant has a duty under the contract, (3) the defendant violated that duty, and (4) the plaintiff was damaged. *See Smith v. Eisen*, 245 S.W.3d 160, 168–69 (Ark. Ct. App. 2006). Farm Bureau does not challenge the contract's existence or enforceability.

Under the policy, Farm Bureau had a duty to pay the "actual cash value" of Smith's F-150, based on "consideration of [the truck's] fair market value, age, and condition . . . at the time of loss . . ." The Complaint says that Farm Bureau breached its duty to consider the truck's fair market value because it based its valuation on "values of comparable vehicles that have been artificially reduced by an unjustified 'Projected Sold Adjustment' that is (a) arbitrary, [and] (b) contrary to industry practices and consumer experiences (and therefore *not reflective of the vehicle's fair market value*) . . . " Compl. ¶ 37 (emphasis added). To support this, Smith alleges that "a 9% reduction on a used vehicle is not typical and does not reflect market realities," Compl. ¶ 18 (emphasis omitted), and that dealers' actual practice is not to inflate prices above market value because of the "intense competition in the context of internet pricing and comparison shopping." Compl. ¶ 19. If this is true, then Farm

Bureau did *not* consider the truck's fair market value; it considered an artificially lower value, in breach of its contractual duty,[3] so Smith stated a claim for breach of contract based on the policy language.

Based on our review of the record, and accepting Plaintiff's allegations as true, we believe that Smith has stated a plausible claim. We do not opine on the ultimate merits of his claim.

C.

Finally, Smith asked us to certify two questions to the Arkansas Supreme Court:

(i) Whether under Arkansas law, Arkansas Insurance Rule and Regulation 43, which sets forth the minimum standards for determining a total loss vehicle's actual cash value, can serve as a basis for construing the insurance policy term "actual cash value," where that term was undefined in the policy itself; and

(ii) Whether, under Arkansas law, an insurance contract's "conformity clause," *i.e.* a clause stating that the insurance policy's provisions shall be amended to conform with applicable laws of the State of Arkansas, can serve as a basis for reforming the insurance policy term "actual cash value," so that it conforms with the minimum standards for adjusting total loss claims as expressed under Arkansas Insurance Rule and Regulation 43.

Appellant's Motion to Certify Questions of Law.

---

[3] The fact that Mitchell International performed the calculations does not change the analysis. Farm Bureau's duty was to consider the fair market value, and using anything other than fair market value would be a breach, regardless of whether Farm Bureau realized the value was inaccurate.

"[Q]uestions of Arkansas law which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent" may be certified from federal courts to the Arkansas Supreme Court. Ark. R. Sup. Ct. 6-8(a)(1). But "[c]ertification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.'" *McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (per curiam) (citation omitted).

Because the issues before us are resolved by existing law and the policy, we decline to certify to the Arkansas Supreme Court.

III.

We affirm the judgment of the district court on the breach of contract claim for violation of Regulation 43, and reverse and remand on the common law breach of contract claim. We deny Smith's motion to certify questions to the Arkansas Supreme Court.

COLLOTON, Circuit Judge, dissenting.

I would affirm the judgment. Appellant Smith pleaded a single count of breach of contract. The district court properly rejected Smith's claim that his insurance contract with Farm Bureau incorporated Arkansas Insurance Rule and Regulation 43 and certain requirements contained therein. Smith's complaint did not adequately plead a distinct second claim within the same count, so there is no sound basis to reverse and remand.

The majority summarily concludes that Smith pleaded a separate "common law breach of contract theory." For this proposition, the majority cites a portion of one sentence in paragraph 37 of the complaint. Because the sentence includes the phrase

"fair market value," the majority declares that Smith adequately pleaded a common-law theory that the district court failed to address.

This reading of the complaint is unduly generous to Smith. Smith's only discernable theory of breach of contract is that Farm Bureau failed to comply with requirements of Rule 43 (supposedly incorporated into the contract) that apply when an insurer deviates from settling a claim based on "actual cash value." The majority's quotation regarding fair market value comes from a sentence that discusses how Farm Bureau allegedly departed from using "actual cash value." R. Doc. 2, at 11 (¶ 37). The complaint follows the cited sentence by alleging that Farm Bureau's policy must be construed consistent with Arkansas law and Rule 43, such that certain requirements apply when the insurer deviates from actual cash value. *Id*. at 11-12 (¶ 38). Hence, the complaint's discernable theory: Farm Bureau deviated from providing actual cash value because it failed to consider fair market value, and then failed to conform to requirements of Rule 43 that allegedly applied when the insurer deviated from actual cash value. It is little wonder that neither the defendant nor the district court thought to identify in those paragraphs a separate and distinct common-law theory of liability.

Smith's complaint failed to give fair and adequate notice that he intended to embed two separate theories of liability within a single count alleging breach of contract. He and his lawyer had opportunity to amend the complaint to add a second theory of liability, but declined to do so. In my view, declaring error by the district court under these circumstances puts the blame for any misunderstanding on the wrong actor.

———————————————————